UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | |
|---|---|
| AMY LEIGH MILLER a/k/a AMY LEIGH BROWN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ALICIA LOCKHART, in her individual )<br>capacity; JONATHAN WING in his )<br>individual capacity; CITY OF )<br>HENDERSONVILLE; and )<br>HENDERSONVILLE POLICE )<br>DEPARTMENT, )<br>)<br>Defendants. ) | **COMPLAINT**<br><br>Civil Action No.: 1:23-cv-6<br>(Jury Trial Demanded) |

NOW COMES Plaintiff, AMY LEIGH MILLER a/k/a AMY LEIGH BROWN ("Plaintiff" or "Mrs. Miller"), by and through undersigned counsel, and alleges against Defendants ALICIA LOCKHART, in her individual capacity; JONATHAN WING, in his individual capacity; CITY OF HENDERSONVILLE; and HENDERSONVILLE POLICE DEPARTMENT (collectively, "Defendants"), as follows:

**PARTIES**

1. Plaintiff is currently a citizen and resident of McDowell County, North Carolina. At the time the events alleged herein occurred, Mrs. Miller's legal name was Amy Leigh Brown, and she was a citizen and resident of the City of Hendersonville located in Henderson County, North Carolina.

2. Upon information and belief, Defendant Alicia Lockhart ("Defendant Lockhart" or "Lockhart") is a citizen and resident of Polk County, North Carolina. At all times relevant to this action, Defendant Lockhart was a sworn officer of the Hendersonville Police Department, acting

under the color of state law, as well as pursuant to the ordinances, regulations, policies, customs, and usages of the Hendersonville Police Department and the City of Hendersonville. At all relevant times, Defendant Lockhart was acting within the scope of her employment. Defendant Lockhart is sued in her individual capacity.

3. Upon information and belief, Defendant Jonathan Wing ("Defendant Wing" or "Wing") is a citizen and resident of Polk County, North Carolina. At all times relevant to this action, Defendant Wing was a sworn officer of the Hendersonville Police Department, acting under the color of state law, as well as pursuant to the ordinances, regulations, policies, customs, and usages of the Hendersonville Police Department and the City of Hendersonville. At all relevant times, Defendant Wing was acting within the scope of his employment. Defendant Wing is sued in his individual capacity.

4. The City of Hendersonville ("Defendant Hendersonville" or the "City") is a municipal corporation in Henderson County, North Carolina, established and existing pursuant to Chapter 160A of the North Carolina General Statutes, as defined in N.C. Gen. Stat. § 160A-1 and possessing all corporate powers as set forth in N.C. Gen. Stat. § 160A-11.

5. Upon information and belief, Defendant Hendersonville Police Department ("Defendant HPD" or "HPD") is a political subdivision of Defendant Hendersonville. At all times relevant hereto and pursuant to N.C. Gen. Stat. § 160A-281, Defendant Hendersonville had appointed Herbert Blake[1] ("Chief Blake") as the City's Chief of Police.

6. In further exercise of its statutory powers, Defendant Hendersonville established a municipal code of ordinances, which provides for the appointment of a city manager to serve as the chief executive officer of the administrative branch of the City's government. At all times

---

[1] Upon information and belief, Chief Herbert Blake resigned in August 2020.

2

relevant hereto, John Connet ("Mr. Connet") served as Defendant Hendersonville's City Manager. In his capacity as City Manager, Mr. Connet is responsible for implementing the policies and enforcing the ordinances enacted by the City.

7. At all times relevant hereto, Defendant Hendersonville acted through its duly appointed Chief of Police and City Manager, and their respective designees, including but not limited to the City's employees, managers, and directors, including its police officers.

8. The customs and practices of Chief Blake and Mr. Connect represent the official policies of Defendant Hendersonville.

## JURISDICTION AND VENUE

9. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the claims for relief asserted herein arise, in part, under the United States Constitution and federal law, pursuant to 42 U.S.C. §§ 1983 and 1988. This action also arises in part under the North Carolina Constitution and the common law of the State of North Carolina.

10. This Court has supplemental jurisdiction over all state law claims alleged against Defendants pursuant to 28 U.S.C. § 1367 because all state law claims asserted herein arise from a common nucleus of operative facts as Plaintiff's federal claims, as set forth in the factual allegations asserted herein below.

11. Venue is proper in the Western District of North Carolina pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## WAIVER OF GOVERNMENTAL IMMUNITY

12. Upon information and belief, Defendants Hendersonville and HPD have waived their sovereign and/or governmental immunity through the purchase of one or more policies of

3

liability insurance pursuant to N.C. Gen. Stat. § 160A-485 and/or by participating in a local government risk pool pursuant to N.C. Gen. Stat. § 58-23-5.

## FACTUAL ALLEGATIONS

13. Plaintiff reiterates and realleges each and every paragraph above and incorporates same by reference as if fully set forth herein.

14. On or about January 6, 2020, Mrs. Miller and her husband, Jason, were shopping at the Petco store located at 118 Highlands Square Drive, Hendersonville, North Carolina 28792.

15. Just before entering the store, Mrs. Miller threw away some trash and inadvertently dropped her debit card in the trash can. Mrs. Miller removed the trash bag in order to retrieve her debit card and then went into the store.

16. Upon information and belief, a police officer, now known to be Defendant Lockhart, witnessed Mrs. Miller pulling a debit card out of the trash and followed her into the store. Defendant Lockhart demanded that Mrs. Miller surrender her purse, which she did voluntarily. Defendant Lockhart then began to search Mrs. Miller's belongings.

17. Because Mrs. Miller had been shopping, she was carrying a few items she planned to purchase, including a cat shedding brush and two (2) cat collars.

18. While searching Mrs. Miller's purse, Defendant Lockhart found Mrs. Miller's debit card and asked her if it belonged to her. Defendant Lockhart also found prescription medications in Mrs. Miller's purse.

19. At the time, Mrs. Miller suffered from carpel tunnel syndrome and was scheduled for surgery a few days later. The prescriptions Mrs. Miller was carrying were used to treat her carpal tunnel syndrome.

4

20. Defendant Lockhart placed Mrs. Miller under arrest for allegedly not having prescription medications in their proper bottles. While being placed in handcuffs, Mrs. Miller told Defendant Lockhart about her damaged wrist and asked that she please be careful with her right wrist, the wrist for which she had surgery scheduled in the near future.

21. Defendant Lockhart then escorted Mrs. Miller to a waiting patrol car and did so by holding her by her handcuffed wrists behind her back. Mrs. Miller began experiencing pain in her already injured right wrist as the way in which Lockhart was holding her by the handcuffs was causing Mrs. Miller great pain. As a result, Mrs. Miller flinched from the pain, and she also tried to move her wrist to a more comfortable position while in the handcuffs.

22. Then, Defendant Lockhart jerked on Mrs. Miller's arm, causing her extreme pain in her arm. Mrs. Miller begged Defendant Lockhart not to jerk on her arm because it was causing her pain.

23. When they reached the patrol car, Defendant Wing began to question Mrs. Miller about her tattoos.

24. Just prior to being placed in the patrol car, while still handcuffed and not resisting, Mrs. Miller turned her shoulders slightly to tell her husband that her debit card was in her purse.

25. Defendant Lockhart then threw Mrs. Miller to the ground and Defendant Wing tackled her, throwing his considerable weight on top of her. Defendant Wing used so much force that he broke Mrs. Miller's right foot and ankle. Mrs. Miller suffered additional injuries including injuries to her right wrist, left shoulder and hip, and a chipped cuspid (canine tooth).

26. Defendants took Mrs. Miller to the hospital where she was diagnosed with a severely fractured right foot, which required surgery, including the surgical installation of a rod,

plates, and screws to repair the fracture. Mrs. Miller later developed an infection at the surgical site, which required recasting of her foot.

27. Mrs. Miller was also diagnosed with depression and post-traumatic stress disorder ("PTSD") and/or exacerbation of these conditions as a result of the events of January 6, 2020.

28. Upon information and belief, no investigation of the level of force used on January 6, 2020 with Mrs. Miller was performed by Defendant HPD or Defendant Hendersonville, even after Mrs. Miller filed a complaint with HPD.

29. All charges against Mrs. Miller arising from the events of January 6, 2020 were dropped, including a charge for resisting arrest.

### FIRST CLAIM FOR RELIEF
### 42 U.S.C. § 1983 – Excessive Force in Violation of
### the Fourth and Fourteenth Amendments
*(Against Defendants Lockhart and Wing, in their individual capacities)*

30. Plaintiff reiterates and realleges each and every paragraph above and incorporates same by reference as if fully set forth herein.

31. While shopping at Petco, Mrs. Miller was approached by Defendant Lockhart, who demanded to search her purse. Mrs. Miller turned over her purse voluntarily to the officer and without incident.

32. After finding the prescription medications in Mrs. Miller's purse, Defendant Lockhart placed her under arrest.

33. Defendant Lockhart handcuffed Mrs. Miller. While Defendant Lockhart was handcuffing her, Mrs. Miller informed Defendant Lockhart about the pre-existing injury to her wrists for which she was scheduled to have surgery, and she asked Defendant Lockhart to please be careful with her wrists because she was in pain. Mrs. Miller did not resist being handcuffed, nor did she flee or attempt to escape in any way. Nevertheless, showing no concern for Mrs. Miller's

6

well-being or pain level or tolerance, Defendant Lockhart proceeded to unnecessarily yank on Mrs. Miller's handcuffed wrists and her arm, causing Mrs. Miller extreme pain.

34. Before being placed into the patrol car, Mrs. Miller attempted to tell her husband about their bank card. As a result, Defendant Lockhart threw Mrs. Miller to the ground and Defendant Wing tackled her with such force that he broke Mrs. Miller's right foot, injured her shoulder, broke at least one of her teeth, and caused additional damage to her already ailing right wrist. Upon information and belief, Defendant Wing is substantially larger than Mrs. Miller.

35. Defendants employed a level of brutality and force against Mrs. Miller that was objectively unreasonable, gratuitous, and unnecessary, and thus excessive under the Fourth and Fourteenth Amendments. There was no reasonable basis for the officers to use any level of physical or violent force given Mrs. Miller's compliance.

36. As a direct, foreseeable, and proximate result of Defendants' actions, Mrs. Miller has suffered damages and injuries including, but not limited to personal injuries, medical expenses, pain and suffering, emotional distress, humiliation, embarrassment, anxiety, mental anguish, as well as any other damages to be proven at the trial of this matter. Therefore, Mrs. Miller is entitled to recover all general and special damages sustained, including, but not limited to all recoverable compensatory damages including attorneys' fees and costs incurred as a result of Defendants' acts.

**SECOND CLAIM FOR RELIEF**
**42 U.S.C. § 1983 – Deliberately Indifferent Policies, Practices, Customs, Hiring and Training in Violation of the Fourth and Fourteenth Amendments**
*(Monell Claims against Defendants Hendersonville and Hendersonville Police Department)*

37. Plaintiff reiterates and realleges each and every paragraph above and incorporates same by reference as if fully set forth herein.

38. At all times relevant to this complaint, Defendants Hendersonville and HPD are the policymakers responsible for establishing, enforcing, directing, and controlling the policies, customs, practices, and procedures relative to law enforcement within the City of Hendersonville.

39. Defendants Hendersonville and HPD at all relevant times have maintained a policy, custom or practice that has been the cause, the moving force, behind the violation of Plaintiff's constitutional rights. Defendants Hendersonville and HPD's policies, customs and training (or lack thereof) for Hendersonville police officers were inadequate to prepare its officers, including Defendants Lockhart and Wing, to properly and lawfully police the City in a manner that ensures the constitutional protections granted to the citizens of Hendersonville. Specifically, said policies, customs or practices include but are not limited to:

   a. A custom or policy of failing to, or refusing to, conduct investigations of citizen complaints of excessive force against Hendersonville police officers, including the complaints against Defendants Lockhart and Wing;

   b. A custom or policy of condoning and/or ratifying the conduct of Hendersonville police officers by systematic failure or refusal to conduct investigations of citizen complaints of excessive force against Hendersonville police officers, including the complaints against Defendants Lockhart and Wing;

   c. A custom or policy of failing to set up and follow systems to prevent abuse by police officers including a system of discipline for the use of unreasonable levels of force against citizens who are alleged to have committed a minor crime;

   d. Failing to terminate or otherwise discipline officers who abuse their authority;

- e. Condoning or ratifying Hendersonville police officer's use of unreasonable levels of force against citizens by refusing and/or failing to investigate citizen complaints or refusing to do so; and

- f. Any other policy, custom or practice that caused a violation of Mrs. Miller's constitutional rights that may be learned through the discovery process.

40. The above Defendants' policies, customs, failures, refusals, or practices were a direct, foreseeable, and proximate cause of Defendants Lockhart and Wing violating Mrs. Miller's Fourth Amendment rights enforceable through 42 U.S.C. § 1983, and a direct, foreseeable, and proximate result of Defendants' conduct, Plaintiff suffered deprivation of her constitutional rights.

41. As a further direct, foreseeable, and proximate result of Defendants' conduct, Mrs. Miller incurred and continues to incur injuries and damages including, but not limited to, personal injuries, pain and suffering, difficulty sleeping, emotional distress, humiliation, embarrassment, anxiety, and mental anguish. Mrs. Miller has also incurred out of pocket expenses including, but not limited to, medical expenses and lost wages. Mrs. Miller is entitled to recover all general and special damages sustained, including but not limited to, all recoverable compensatory damages including attorneys' fees and costs as a result of Defendants' actions and their deprivation of Mrs. Miller's constitutional rights.

### THIRD CLAIM FOR RELIEF
**Assault**
*(Against Defendant Lockhart and Wing, in their individual capacities)*

42. Plaintiff reiterates and realleges each and every paragraph above and incorporates same by reference as if fully set forth herein.

43. The actions of Defendants Lockhart and Wing during their encounter with Mrs. Miller, including but not limited to, slamming her to the ground and tackling her while she was

handcuffed and not resisting arrest, were intentional acts of force and violence that caused offensive and harmful contact with Mrs. Miller.

44. Mrs. Miller had a reasonable apprehension to imminent bodily harm because, while handcuffed, Defendants Lockhart and Wing threw her to the ground and tackled her while she was handcuffed and unable to avoid hitting the ground with her full body weight.

45. Through their actions, Defendants Lockhart and Wing actually caused the offensive and harmful contact with Mrs. Miller described hereinabove.

46. As a direct, foreseeable, and proximate result of Defendants Lockhart and Wing's assault on Mrs. Miller, she has and continues to incur injuries and damages including, but not limited to, personal injuries, pain and suffering, difficulty sleeping, emotional distress, humiliation, embarrassment, anxiety, and mental anguish. Mrs. Miller has also incurred out of pocket expenses including, but not limited to, medical expenses and lost wages. Mrs. Miller is entitled to recover all general and special damages sustained, including but not limited to, all recoverable compensatory damages including attorneys' fees and costs.

## **FOURTH CLAIM FOR RELIEF**
**Battery**
*(Against Defendants Lockhart and Wing, in their individual capacities)*

47. Plaintiff reiterates and realleges each and every paragraph above and incorporates same by reference as if fully set forth herein.

48. Defendants Lockhart and Wing intended to and did make offensive and harmful physical contact with Mrs. Miller including, but not limited to, throwing Mrs. Miller to the ground and tackling her, while she was handcuffed and not combative, for which Defendants had no lawful and/or reasonable justification. Mrs. Miller did not consent to Defendant Lockhart or Defendant Wing's conduct and contact.

49. As a direct, foreseeable, and proximate result of Defendants Lockhart and Wing's battery of Mrs. Miller, she has and continues to incur injuries and damages including, but not limited to, personal injuries, pain and suffering, difficulty sleeping, emotional distress, humiliation, embarrassment, anxiety, and mental anguish. Mrs. Miller has also incurred out of pocket expenses including, but not limited to, medical expenses and lost wages. Mrs. Miller is entitled to recover all general and special damages sustained, including but not limited to, all recoverable compensatory damages including attorneys' fees and costs.

### FIFTH CLAIM FOR RELIEF
**Intentional Infliction of Emotional Distress**
*(Against Defendants Lockhart and Wing, in their individual capacities)*

50. Plaintiff reiterates and realleges each and every paragraph above and incorporates same by reference as if fully set forth herein.

51. The actions of Defendants Lockhart and Wing, as described in the above paragraphs, constitute extreme and outrageous conduct in which Defendants either:

   a. intended to inflict severe emotional distress upon Mrs. Miller;

   b. knew that such distress was certain or substantially certain to result from their conduct; or

   c. were recklessly indifferent to the likelihood that the conduct would cause severe emotional distress.

52. As a direct, foreseeable, and proximate result of Defendants Lockhart and Wing's conduct with respect to Mrs. Miller, she has suffered personal injuries, pain and suffering, humiliation, embarrassment, and mental anguish, and diagnosed with depression and PTSD and/or exacerbation of these conditions. Further, Mrs. Miller has incurred out of pocket expenses including but not limited to medical expenses for the treatment of her personal injuries including

11

Case 1:23-cv-00006-MR-WCM     Document 1     Filed 01/06/23     Page 11 of 17

but not limited to her pain and suffering, emotional distress, humiliation, embarrassment, anxiety and severe mental anguish, etc. Therefore, Mrs. Miller is entitled to recover all general and special damages sustained, including but not limited to, all compensatory damages including attorneys' fees and costs incurred as a result of Defendants Lockhart and Wing's acts.

## SIXTH CLAIM FOR RELIEF
**Negligent Infliction of Emotional Distress**
*(Against all Defendants)*

53. Plaintiff reiterates and realleges each and every paragraph above and incorporates same by reference as if fully set forth herein.

54. Defendants owed Mrs. Miller a duty of care to enforce and perform their duties to the citizens of the City, including but not limited to their policing duties, in a lawfully prudent manner that would not, directly or indirectly, unlawfully assault, batter, harm, oppress, harass, and otherwise subject Mrs. Miller to the unlawful, unconstitutional, and/or otherwise wrongful conduct alleged in this Complaint.

55. Defendants Lockhart and Wing breached their duties by engaging in the extreme and outrageous conduct described hereinabove and said acts were performed in the course and scope of their employment with Defendants Hendersonville and HPD. Thus, Defendants Lockhart and Wing's breaches are imputed to Defendants Hendersonville and HPD via the doctrine of *respondeat superior*.

56. It was reasonably foreseeable that by breaching Defendants' respective duties and engaging in the extreme and outrageous conduct as described hereinabove, Hendersonville citizens, including Mrs. Miller, would suffer damages and severe emotional distress.

57. The acts and omissions of Defendants jointly and severally as described above, directly, foreseeably, and proximately caused Mrs. Miller severe emotional distress and mental

anguish, and caused her to be diagnosed with depression and PTSD and/or exacerbation of these conditions. Mrs. Miller has incurred out of pocket expenses including but not limited to medical expenses for the treatment of her personal injuries including but not limited to her pain and suffering, emotional distress, humiliation, embarrassment, anxiety and mental anguish, etc. Therefore, Mrs. Miller is entitled to recover all general and special damages sustained, including but not limited to, all compensatory damages including attorneys' fees and costs incurred as a result of the Defendants' acts.

## SEVENTH CLAIM FOR RELIEF
**Negligence**
*(Against all Defendants)*

58. Plaintiff reiterates and realleges each and every paragraph above and incorporates same by reference as if fully set forth herein.

59. Defendants each owed Mrs. Miller a duty of care to perform the duties of their respective commands in a lawfully prudent manner that would not, directly or indirectly, unlawfully assault, batter, harm, oppress, harass, and otherwise subject Mrs. Miller to the unlawful, unconstitutional and/or otherwise wrongful conduct alleged in this Complaint.

60. Defendants Lockhart and Wing breached their duties to Mrs. Miller by:

   a. wrenching her already compromised wrist in the manner described herein;

   b. throwing her to the ground while handcuffed and not resisting or otherwise acting in a threatening or fleeing manner;

   c. tackling her while handcuffed and not resisting or otherwise acting in a threatening or fleeing manner;

   d. failing to act as a reasonably prudent officer would act under the same or similar circumstances; and

13

e. in other ways that may be learned through the course of discovery.

61. Pursuant to the doctrine of *respondeat superior*, Defendants Hendersonville and HPD are liable for the acts and omissions of their employees, Defendants Lockhart and Wing, because at all times relevant hereto, Defendants Lockhart and Wing were acting within the course and scope of their employment with said Defendants.

62. It is reasonably foreseeable that Defendants Lockhart and Wing's acts and omissions, as described hereinabove, would cause injuries and damages to citizens of Hendersonville

63. Defendants' breaches were the direct, foreseeable, and proximate cause of Mrs. physical and emotional harm to Mrs. Miller. Mrs. Miller suffered and continues to suffer injuries and damages including, but not limited to, personal injuries, pain and suffering, difficulty sleeping, emotional distress, humiliation, embarrassment, anxiety and mental anguish. Mrs. Miller has also incurred out of pocket expenses including but not limited to medical expenses and lost wages. Mrs. Miller is entitled to recover all general and special damages sustained, including but not limited to, all recoverable compensatory damages including attorneys' fees and costs.

**EIGHTH CLAIM FOR RELIEF**
**Negligent Training, Supervision and Retention of**
**Defendants Lockhart and Wing**
*(Against Defendants City of Hendersonville and HPD)*

64. Plaintiff reiterates and realleges each and every paragraph above and incorporates same by reference as if fully set forth herein.

65. Defendants City of Hendersonville and HPD owed the citizens of the City of Hendersonville a duty to properly train their law enforcement officers to determine the appropriate level of force to use when attempting to arrest and/or detain individuals suspected of committing a crime.

66. Defendants City of Hendersonville and HPD further owed the citizens of the City of Hendersonville a duty to supervise their law enforcement officers to ensure that they were preforming their duties in a reasonable and lawful manner. Specifically, Defendants City of Hendersonville and HPD had a duty to monitor the manner in which HPD officers interacted with and/or arrested individuals, and to ensure that HPD officers did not use excessive force or violate the constitutional rights of individuals such as Mrs. Miller.

67. Defendants City of Hendersonville and HPD breached this duty by failing to properly monitor Defendants Lockhart and Wing to ensure that they did not use excessive force and/or violate Mrs. Miller's constitutional rights while interacting with and/or arresting her.

68. Upon information and belief, Defendants City of Hendersonville and HPD further breached this duty through their knowledge of Defendants Lockhart and/or White's aggressive and unreasonable policing tactics and nonetheless permitting them to perform their unreasonable and unconstitutional policing tactics unabated.

69. Defendants City of Hendersonville and HPD's failure to properly train and supervise Defendants Lockhart and Wing were the direct, foreseeable and proximate cause of Mrs. Miller's physical, emotional, financial, and constitutional harm and damages.

70. The harm suffered by Mrs. Miller was a reasonably foreseeable result of allowing an improperly trained and supervised law enforcement officer to continue to arrest and/or detain individuals in the City of Hendersonville.

71. As a direct, foreseeable, and proximate result of Defendants City of Hendersonville and HPD's acts and omissions as set forth hereinabove, Mrs. Miller has and continues to incur injuries and damages including, but not limited to, personal injuries, pain and suffering, difficulty sleeping, emotional distress, humiliation, embarrassment, anxiety, and mental anguish. Mrs. Miller

has also incurred out of pocket expenses including, but not limited to, medical expenses and lost wages. Mrs. Miller is entitled to recover all general and special damages sustained, including but not limited to, all recoverable compensatory damages including attorneys' fees and costs.

### NINTH CLAIM FOR RELIEF
**Punitive Damages**
*(Against Defendants Lockhart and Wing, in their individual capacities)*

72. Plaintiff reiterates and realleges each and every paragraph above and incorporates same by reference as if fully set forth herein.

73. Defendants acted with either an evil motive or with reckless and wanton disregard for Mrs. Miller' rights when they used unnecessary excessive force while arresting her on January 6, 2020. Based on 1) Mrs. Miller's conduct of not resisting (either actively or passively), 2) her size compared to the size of Defendant Wing, 3) the fact that the crime she was accused of allegedly committing was a minor one, and 4) Mrs. Miller's compliance with the officers' requests, including her lack of attempting to flee or escape, Defendants' acts of throwing her to the ground and tackling her with such force as to cause her to suffer broken bones and other injuries were done with an evil motive or reckless and wanton disregard for her constitutional rights and of her rights to be free from harm or injury.

74. The excessive force employed by Defendants against Mrs. Miller was made with reckless and callous indifference to her civil rights, and therefore, Mrs. Miller is entitled to recover punitive damages from Defendants pursuant to 42 U.S.C. § 1983 for those federal claims raised herein and pursuant to N.C. Gen. Stat. § 1D-15 for those state claims herein alleged.

75. As a direct, foreseeable, and proximate result of Defendants' actions, Mrs. Miller has suffered damages and injuries including, but not limited to personal injuries, medical expenses, pain and suffering, emotional distress, humiliation, embarrassment, anxiety, mental anguish, as

well as any other damages to be proven at the trial of this matter. Therefore, Mrs. Miller is entitled to recover all general and special damages sustained, including, but not limited to all recoverable compensatory damages, punitive damages, and attorneys' fees and costs incurred as a result of Defendants' acts.

## JURY DEMAND

Plaintiff demands a trial by jury of the claim asserted in this Complaint.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Amy Miller, respectfully prays the Court:

a. For a judgment in her favor for all general and special damages recoverable by the Plaintiff against the Defendants;

b. For a trial by jury on all issues so triable;

c. For all court costs and other fees allowed by law, including attorneys' fees pursuant to 42 U.S.C. § 1983 or as otherwise authorized by law;

d. That all amounts accrue interest at the prevailing legal rate; and

e. For all other, further relief as the Court deems just and appropriate.

This the 6th day of January, 2023.

Respectfully submitted,

**GREEN MISTRETTA LAW, PLLC**

/s/ Dawn T. Mistretta
Dawn T. Mistretta, N.C. State Bar No. 31691
Stanley B. Green, N.C. State Bar No. 25539
1752 Heritage Center Drive, Suite 101
Wake Forest, North Carolina 27587
Telephone: (919) 278-7453
Facsimile: (855) 876-8893
dmistretta@gmlawyers.org
sgreen@gmlawyers.org
*Counsel for Plaintiff*